UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        CASE NO. 02-CR-81172-DT
        HON. LAWRENCE P. ZATKOFF

    Plaintiff,

vs.

DIAMOND CRAFT,

    Defendant.
    _____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on AUGUST 4, 2005

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Defendant's Motion for Remand to State Court or in the Alternative for Special and Specific Discovery (Docket # 45). The Government has filed a response and the reply period has expired. The facts and legal arguments are adequately set forth in the briefs submitted. Therefore, finding that the determination of the issues will not be aided by oral argument, and pursuant to E.D. Mich. Local R. 7.1(e), this Court ORDERS that Defendant's Motion for Remand to State Court or in the Alternative for Special and Specific Discovery be decided upon the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion for Remand to State Court or in the Alternative for Special and Specific Discovery is DENIED.

## II. BACKGROUND

On January 21, 2002, Detroit Police Department Narcotics Officers executed a search warrant pursuant to which Defendant was charged with (a) Intent to Distribute Marijuana, (b) Felon in Possession of a Firearm, and (c) Felony Firearm. Defendant was arraigned on those charges on February 8, 2002. On November 21, 2002, a pre-trial hearing was held in Wayne County Circuit Court, and the record reflects that the Wayne County Assistant Prosecutor and Defendant had an understanding that Defendant would plead guilty to the above charges and would be imprisoned for two years and receive three years probation. In exchange, the prosecutor would withdraw the "Enhancement Notice or Habitual Notice" and dismiss a separate case arising out of an arrest of Defendant on November 10, 2002. The Wayne County Circuit Judge stated that she would not take the plea that day as she understood that Defendant was to "clean up some other matters" in Macomb County and she set a new date of December 10, 2002, for trial or a plea. The court also encouraged the parties to return for the plea sooner than December 10, 2002, once Defendant took care of matters in Macomb County.

On November 19, 2002 (before a plea was taken in Wayne County Circuit Court), a federal Complaint was filed against Defendant stemming out of his arrest on November 10, 2002. An indictment was filed in that case on November 26, 2002. Judge Steeh was assigned that case (the "Steeh case"), which went to trial and resulted in a jury conviction of Defendant and a sentence of 360 months. On December 9, 2002, a Complaint was filed in federal court in the instant case. An indictment was filed on December 12, 2002, charging Defendant with (1) Felon in Possession of a Firearm, (2) Possession with Intent to Distribute Marijuana, and (3) Possession of a Firearm in Furtherance of a Drug Trafficking Crime. Both the Steeh case and the instant case were referred to the U.S. Attorney's Office for federal prosecution as part of the Project Safe Neighborhood ("PSN") program.

After countless delays and adjournments for a myriad of reasons, the Court has set an inflexible final plea cut-off in this case for August 9, 2005. Then, on July 1, 2005, Defendant filed

the instant Motion on the basis of several other cases in the Eastern District of Michigan pursuant to which the PSN program has been challenged. Pursuant to 28 U.S.C. §2855, Defendant requests that the Court remand his case to state court (i) so that he can accept the plea deal he believes he was wrongfully denied in Wayne County Circuit Court, and (ii) because he believes the PSN program unfairly discriminates against African American males in gun cases. In the event the case is not remanded, Defendant asks that the Court allow discovery of the PSN program files so that he can determine whether he was the victim of racial targeting by the Wayne County Prosecutor's Office and the U.S. Attorney's Office.

### III. OPINION

**A.      Remand**

In support of his Motion for Remand, Defendant compares his case to that of Terron Nixon. Mr. Nixon also initially had charges brought against him in state court, was offered a plea deal in state court and then had the case referred to the U.S. Attorney's Office for the Eastern District of Michigan in order to bring a federal prosecution. Mr. Nixon turned down a plea deal in state court on the advice of counsel, notwithstanding the fact that a PSN program coordinator told Mr. Nixon that Mr. Nixon could either take the plea deal in Wayne County or his case would be referred for federal prosecution. After the court in Mr. Nixon's case determined that he had received ineffective assistance of counsel while his case was pending in state court (because Mr. Nixon was never properly advised of his true sentencing exposure in federal court), the court ordered the government to produce documents related to the PSN program for *in camera* review by the court. *See U.S. v. Nixon*, 318 F.Supp.2d 525, 526-27 (E.D. Mich. 2004)(Feikens, J.). The government responded to the court's order, but such response is not a part of the public record as a result of its *in camera* nature. Simultaneously, the government moved to have the indictment against Mr. Nixon dismissed and have the case remanded to state court for prosecution. The court granted the government's motion as "such an action remedies the ineffective assistance of counsel that both defendants

received in state court in that they were not properly advised of the penalties they faced if and when their cases were referred for federal prosecution as part of Project Safe Neighborhoods."

The Court notes that this case is significantly different from that of Mr. Nixon because, as the Defendant's Motion states, "Unlike Defendant Nixon, [Defendant] had great counsel who negotiated a great plea deal." In addition, unlike Mr. Nixon, Defendant does not allege that he was improperly advised of the proper penalties in federal court if he was prosecuted here. As such, this Court finds that the basis for dismissing the indictment, *i.e.*, ineffective assistance of counsel, against Mr. Nixon is not present in the instant case. The Court also notes that Defendant has not set forth any authority which provides that this Court has the power to remand a criminal case to state court for prosecution. As such, the Court declines Defendant's request to remand this case to state court.

Although not argued by Defendant, the Court has the power to dismiss an indictment against a criminal defendant. The Court is not persuaded, however, that a dismissal of the indictment is warranted or necessary in this case. The thrust of Defendant's motion and brief is that the Wayne County Prosecutor's Office and the U.S. Attorney's Office have "dishonorably deprived" Defendant of the plea deal that apparently had been negotiated in state court between the Wayne County Assistant Prosecutor and Defendant prior to the Complaint being filed in this case. The Court finds that argument to be without merit. First, it is well established law that a defendant can be charged in both state court and federal court for the same conduct. *See Heath v. Alabama*, 474 U.S. 82 (1985); *Bartkus v. Illinois*, 359 U.S. 121 (1959). Therefore, even if Defendant had been permitted to enter a plea in state court for his alleged conduct that resulted in his arraignment on February 8, 2002, there is no law which would have prohibited the U.S. Attorney's Office from prosecuting Defendant for that same conduct.

Second, a criminal defendant is not entitled to a plea bargain agreement because a plea bargain agreement has no constitutional significance until it is accepted by a court. *See, e.g., Mabry v. Johnson*, 467 U.S. 504; *U.S. v. Ball*, 805 F.2d 1036 (6th Cir. 1986). Third, to the extent Defendant's allegations of dishonorable deprivation of the state court plea suggest vindictive

prosecutorial conduct (as the Government has interpreted Defendant's Motion to suggest), the Court notes that the decision of what charges to bring against a defendant is a matter of prosecutorial discretion. *See, e.g., Bordenkircher v. Hayes*, 434 U.S. 357, 364-65 (1978) ("To hold that a prosecutor's desire to induce a guilty plea is an unjustifiable standard, which, like race or religion, may play no part in his charging decision, would contradict the very premises that underlie the concept of plea bargaining itself." (internal quotations omitted)); *see also U.S. v. Goodwin*, 457 U.S. 368, 378-80 (1982). Accordingly, the Court concludes that Defendant has not demonstrated good cause for dismissing the federal indictment against Defendant in this case.

For the reasons set forth above, the Court DENIES Defendant's Motion for Remand.

**B.     Special and Specific Discovery**

In the alternative, Defendant seeks the following relief:

> B. Discovery of the PSN file so that he may present at evidentiary hearing why the Prosecutor's Office and U.S. Attorney rushed jurisdiction to the latter depriving him of the opportunity to accept his plea deal.
>
> C. Discovery of the PSN file so that defendant Craft may present evidence that he, like defendants Nixon and Curry in the aforecited case, can determine whether he was the victim of racial targeting by the Wayne County Prosecutor's Office and the U.S. Attorneys Office for the Eastern District of Michigan.

In essence, Defendant is suggesting that he has been subject to selective prosecution under the PSN program because he is an African American male. The U.S. Supreme Court clearly defined the elements of a selective prosecution claim in *United States v. Armstrong*, 517 U.S. 456 (1996). First, the Supreme Court explained that prosecutors have a broad range of discretion and that there is a presumption that prosecutors faithfully perform their duties. *Id.* at 464. Next, the Supreme Court explained that a prosecutor's discretion is nevertheless subject to the constitutional constraints of the Equal Protection Clause and that "the decision whether to prosecute may not be based on 'an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (citation omitted). "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Id.* at 465 (citation omitted). The Court

further explained:

> The requirements for a selective-prosecution claim draw on "ordinary equal protection standards." The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted.

*Id.*

In *Armstrong*, a number of defendants asserted that they were being selectively prosecuted under federal drug and firearms laws because they were black. The defendants relied on a study which indicated that, in every one of the prosecutions under these laws for that year, the defendants were black. The Supreme Court denied defendant's claim and held that such evidence did not satisfy the threshold to allow defendants to proceed to discovery on their claim. *Id.* at 470. The Supreme Court stated that "[t]he study failed to identify individuals who were not black and could have been prosecuted for the offenses for which respondents were charged, but were not so prosecuted." *Id*.

Defendant in the present case similarly has failed to identify similarly situated individuals who should have been prosecuted, but were not. Accordingly, Defendant has failed to overcome the presumption of prosecutorial good faith. Defendant also has failed to produce any evidence demonstrating discriminatory purpose on behalf of prosecutors. In his Motion, Defendant merely asserted that he seeks discovery to determine whether the PSN program relied on racial targeting such that it was being applied disproportionately to African Americans. In his brief, Defendant states "There must be a determination why Mr. Craft's matter[s] were referred to federal jurisdiction under PSN when a plea deal had been worked out that would have resolved all pending prosecutions" and suggests that the Court should convene an evidentiary hearing to determine what caused his cases to be referred to the U.S. Attorney's Office.

Defendant also generally relies on the fact that other judges in the Eastern District have dismissed cases involving the PSN program. Defendant overlooks the basis of the court's reasoning in at least two of those three cases. As set forth above, Judge Feikens dismissed the indictment

against Mr. Nixon (and Mr. Curry) because there was ineffective assistance of counsel in the state proceeding and pursuant to the government's motion to dismiss the indictment. In a case before Judge Tarnow, Judge Tarnow likewise threw out the indictment against the defendant in that case because the defendant's state court counsel could not render effective or adequate counsel based on the timing and circumstances of that case. As noted above, Defendant was not subject to ineffective assistance of counsel that resulted in him rejecting the plea agreement offered by the state court prosecutors. Rather, Defendant had great counsel and was prepared to go forward with the plea; that the prosecution did not go forward with the plea arrangement was its right, as discussed above.

Finally, in the third case, which was before Judge Hood, the government once again asked that the indictment against the defendant in that case be dismissed without prejudice. As a result of the government's failure to comply with orders of Judge Hood, however, she dismissed the indictment with prejudice. The Government has not asked the Court to dismiss the indictment against Defendant in this case, nor has the Government failed to comply with orders of this Court to date. Accordingly, the Court does not find the Defendant's arguments regarding the events of such other cases relevant in resolving the instant motion.

Defendant also points to studies being conducted by the Detroit Federal Defender's Office which show a high percentage of firearms prosecutions pursuant to referrals under the PSN program in Wayne County are against African-Americans, Hispanics and other minorities (59 out of 61 referrals). Defendant also notes that the Flint Federal Defender's Office has reported that six of the seven firearms prosecutions referred under the PSN program involved African American defendants. Significantly, however, Defendant has not offered any evidence, or even an argument, of a discriminatory purpose with respect to referrals under the PSN program. Defendant's assertions suggest that he believes that the statistics alone create an inference of discriminatory purpose and require further discovery on the matter. The Court finds that the law provides otherwise.

In *Armstrong*, the Supreme Court rebutted the presumption that "people of *all* races commit

7

*all* types of crimes." The *Armstrong* Court, relying on the statistics of the United States Sentencing Commission, demonstrated that "more than 90% of the persons sentenced in 1994 for crack cocaine trafficking were black, 93.4% of convicted LSD dealers were white, and 91% of those convicted for pornography or prostitution were white." *Armstrong*, 517 U.S. at 469 (citations omitted). Accordingly, Defendant's assertion that over 54 of the 61 firearms prosecutions under the PSN program involving the Detroit Federal Defenders Office and six out of seven firearms cases in the Flint Federal Defender's Officer are against African-Americans is insufficient to create an inference of discriminatory purpose. Therefore, Defendants' request for Special and Specific Discovery is DENIED.

## IV.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion for Remand to State Court and in the Alternative for Special and Specific Discovery is DENIED.

The parties are hereby reminded and ORDERED to appear for the Final Plea Conference at 11:00 a.m. on Tuesday, August 9, 2005, at the United States Courthouse, 231 W. Lafayette, Room 734, Detroit, Michigan 48226, for purposes of either (1) presenting the Court with their Joint Final Pre-Trial Order and discussing the logistics of the trial in this case (which, in the absence of a plea bargain agreement, will commence with jury selection on August 22, 2005, or (2) entering a guilty plea, as August 9, 2005, is the last day that a Rule 11 Plea Agreement will be accepted by the Court.

IT IS SO ORDERED.


s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: August 4, 2005

CERTIFICATE OF SERVICE

    The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on August 4, 2005. A copy was also faxed to Defense Attorney Kevin Hammons.

                                      s/Marie E. Verlinde  
                                      Case Manager  
                                      (810) 984-3290